Good morning, Your Honors. If it pleases the Court, my name is Russ Handy and I represent the Plaintiff and the Appellant in this case, Robert Goodell. Your Honors, we're challenging the findings of the District Court. We contend on this appeal that the District Court committed clear error when it sat as the trial judge and issued certain findings in the case. There's something really interesting to me about the way the trial went. It seems obvious that the lease is 90% or maybe 99% of the facts that matter, and neither side produced the lease. It was accessible to both sides, the landlord, because the landlord would ordinarily have a copy of the lease, and the tenant because they would get it on a request for production. And so all I can figure out is each side had some tactical reason for not producing it. But I don't know how to decide the case without reading the lease. If I may address that, Your Honor, that goes right to the heart of the question here in this case. The reason why, first of all, the plaintiff never obtained a copy of the lease. Well, that's their own fault if they didn't do a request for production. And the reason why we didn't ask for a copy. Not looking in your file if you're the landlord. The reason why we didn't ask for a copy of the lease is, as we laid it out in our moving papers, is that in the very first formal pleading filed by the defendant, they admitted that it was their parking. But right there in the answer they said, Grouse Grocery Store and its parking are subject to the laws and so forth. And then we entered into no less than three stipulations of fact during the course of the case that they had all the necessary control and authority to make any change in the parking lot that was necessary. And that was on the record. Counsel, where in the record did Grouse indicate that it had necessary control to make the changes? I think there's several places. The first place is that in the stipulation of fact, it stipulated that it was readily achievable. That doesn't mean it can achieve it, though. The fact that something is readily achievable doesn't mean that Ralphs can achieve it. Because if the lease does not authorize Ralphs to engage in substantial modification of the property, then Ralphs wouldn't necessarily have the authority or control over that. I agree. And then, therefore, I would never be in a position to say it's readily achievable for us to do it. The term readily achievable is defined by statute at 42 U.S.C. 12181 subsection 9. And there's several factors to consider. And it's achievable, whether it's easily achievable and able to be carried out without much difficulty or expense. It's not just a finance thing. It's also control. It's ability to do something. We run into that all the time where they're precluded by city ordinance or something else and they just can't do it. And, therefore, it's not readily achievable. Because I would be able to admit on behalf of some of my wealthier relatives that it's readily achievable to have a mansion. But that wouldn't be true for me. That's correct. And you could never then enter into a stipulation saying it's readily achievable for me to own a mansion. Did Ralph say it was readily achievable for Ralphs? That's the question I have in my mind. Well. How was the question phrased to Ralph? Was it readily achievable in the universe? Was it readily achievable for you to do this? Ralph was the one answering and entering into the stipulation. The suggestion is Ralph was saying it's readily achievable for Bill Gates. I mean, I don't see how they could do that. Readily achievable for the landlord, maybe. I don't know. That's what bothers me about this case. I'm not sure the proof was tightly elicited. If I could draw your attention to the excerpt of record number four on page seven. This is Ralph's pretrial statement itself. And I think that will address your question. That's page seven of the excerpt of record number four. Their pretrial statement. And under the statement, undisputed facts, where we're laying out what's going to be in contention in this trial. Okay. These ERs are in tabs, right? Yes. Okay. Which tab? This is excerpt of record tab number four. Okay. I'm looking at page seven. Paragraph seven there. Page seven, item seven, which is, do you see that? This is just too cute. It says it's readily achievable, and I read it in the ordinary sense to mean, yeah, it could be done, but that doesn't mean it's their parking lot. I can look out at the parking lot for this courthouse and say you could do this and you could do that very easily, but it's not my parking lot. I can't do it. Well, first of all, they did say it was their parking lot in the answer. In the very first formal plea that they filed, they declared that it's their parking lot. And that's excerpt of record number two. That's the answer. And it's page two, line 24 to 25. Answering defendant further admits that the grocery store and its parking are public accommodation or facilities subject to the requirements of the law. Page two, line 25. It says the grocery store and its parking. The grocery store's parking. So you're taking that to mean that Ralph said it owned the parking lot. Yes, it says answering defendant admits that it's the owner and operator of the public. I can't give any weight to any of that. It's just too cute, playing with words rather than substance. I mean, I'm looking at an ordinary landlord and tenant relationship, and gosh, I can ask ever since my student days when the landlord really wouldn't do anything. And ever since then, I can ask the landlord to do reasonable things, and the landlord ordinarily does them just as a business practice of keeping tenants happy. But I have no right. And if the landlord finds it inconvenient, the landlord won't do it. And they'll say, gee, I'm really sorry, I can't do that because it's such and such. I agree, Your Honor. The problem is that there's no landlord in this case. There's not even one bit of evidence that there is a landlord. Nothing was put forth by the defense. But there was evidence that Ralph rented the grocery store at the shopping center. Not one bit of evidence anywhere. Remember, they didn't put on a case at all. If you remember the procedure in this case, plaintiff put on his case in chief with witness, documents, photographs, so forth. The defense then moved for judgment under 52C, judgment on partial findings. The district court denied their motion. There's no evidence that they're a tenant rather than the owner of the fee? None at all that I can remember. And they moved for judgment. And the court said, deny, bring on your case. And they said, we don't have a case. We don't have any witnesses. And everyone was silent. And the judge said, why are we in favor of the defense anyways? And walked off the bench without explaining the reasons why. And then we got the thing later. The only evidence put forth in this case was by the plaintiff. I was starting off with the idea that the parties agreed that Ralph was a tenant and the disagreement was how much control it had over the parking. It was our understanding during the course of the case. They admitted that they were the owner and operator of the facility. They admitted that this was their parking. I also believe that they are a tenant. I have no doubt not to believe that. But they also never rebutted any of our evidence or put forth a lease. It was your case, so it was your burden to establish who was responsible for the parking. So the fact that, I mean, perhaps Ralph rested his case because it was of the view that you had not met your burden and didn't want to take on the chance that it might put in evidence that would help you sustain your burden. I agree, and that's why they moved under 52C. But when the judge then denied their motion saying, no, they do have these things, bring on your case, and they said there is no case. That's not uncommon for a judge to deny a motion until the case is completely done. Here's the problem that I have, though, is this. I agree that there is tighter evidence that could be done. There's no doubt about it. Had we known that this was going to be the big issue for the case, that we were going to somehow miss a link establishing that this is parking and not to serve their grocery store or they have some interest in it. It's very fundamental. Had we known that, then, of course, there would be a different way that we would proceed with discovery and so forth. But they stated from the very beginning that it was their parking. And through the course of the case, you know, it never became an issue. They stipulated that they had the ability to make any changes. It was readily achievable to make whatever changes needed to be done, and not just for someone else. As I stated in that pre-straw statement, readily achievable for Ralph to install the parking. So not only do they put their shopping cart returns on it, their customers use it, it is a strike to their front door. Do they say that it's their parking? I can only speak for myself. We don't meet before these things. But I just think you're vastly over-reading the supposed admissions. I think all they're saying in those admissions is it could easily be done rather than we have the power to do it. And you are, frankly, not going to sell me on any alternative to that reading. What I want to know is when the judge made his finding of fact number four, that there's no evidence that defendant now or at any time in the past owned, leased, operated, controlled, or otherwise had any legal or equitable interest in the parking area, boy, I understood the case. You were saying, no, that's clearly erroneous. You can tell it's clearly erroneous because Ralph's had a shopping cart return rack in the parking lot, plus these various things that I've told you have cut no ice with me anyway, where Ralph says it's easily achievable. Not only that, but they also said that they went out and made the changes. Is there anything else besides those two pieces of evidence that the judge had before him to show that it's clearly erroneous, his finding of fact? Aside from the stipulations of fact and the statements that it's their parking, I think the other evidence that would go to whether or not they even had an implied interest in the parking is the testimony of their customer. They use it. Their use of putting shopping cart returns on the parking lot. The fact they stated they caused the changes to be made during the course of the case or caused others to do it. The striping that leads to the front. These things are evidence that are probative. They weigh in favor of the plaintiff. They could have been rebutted. It's kind of slight because any tenant with market power gets the landlord to accommodate all kinds of things. Yeah, and that was my point, is that this could have been rebutted. A tenant with some market power, whatever you ask, if it's not going to really burden the landlord, he says yes ordinarily. I agree, and this is the problem that I have with it, was that I understand in these civil cases that there's a preponderance of evidence. And so the courts or whoever the trier of fact is is going to weigh the evidence. All you had to do was request for production under Rule 34 for the lease. You circle the paragraph that says Rouse controls the parking lot and the landlord has to do whatever Rouse wants in the parking lot, but Rouse will pay for it if it's there, and you win. But we don't need that. That's my whole point, is that we don't need that. There's many agreements between business operators and landlords where there is no lease agreement at all. If you needed it in district court, maybe you need it here. That's what we're arguing about. Yeah. Your Honor, I don't think that that's the question. Is it indispensable that there must be a lease agreement or there must be evidence of a lease agreement? We – I agree that if they had come forward and put on a case and said, look, here's the actual lease agreement, regardless of the evidence you put forth, we can rebut it. Here's the real situation, and laid it out, they might have slammed us. What's the authority for the one who practically controls an area and is subject to the ADA requirements? The authority, I think, is found under the general rule of Title III of the Americans with Disabilities Act, 42 U.S.C. 12182a, and it says that – and it refers to any person who owns, operates, leases, or leases to any area of public accommodation is responsible to ensure that all of their advantages, accommodations, privileges – So operates would be the – is that what – Yes. That is the word in the statute itself. Is that the one you're keying on? In other words, I want to know what it is in the Act that would – for instance, if Ralph has such market power that the landlord always does what Ralph asks, well, maybe that means that Ralph is subject to the Act for that reason. I don't know. The thing is that the statute set up that both landlords and tenants are equally responsible. Lease agreements only shift responsibility between the two of them and do not apply to third parties. That's Ninth Circuit law. It depends. I'm not sure on what circumstances it depends. I think that certainly is true without doubt for what happens inside Ralph's. Well, the parking is one of the – And we know Ralph controls its store. And that was the question. Is the parking lot one of the accommodations that are being offered to Ralph's patrons? Is it one of the privileges, one of the advantages? It's an accommodation. There's no question about it. The parking lot is a public accommodation. And an advantage for its customers. Is it Ralph's accommodation or does Ralph control it? Well, it's an advantage and accommodation for its customers. And so the question is, under those circumstances, when should Ralph be responsible? And the answer is when they have the ability to make the changes. If they get business use out of it, they derive economic gain, business use. It's one of the things they offer to their customers, parking, disadvantage. And simultaneously, they have enough control and ability to make whatever changes are necessary in the parking lot. How do we know any of this? Even on that rack, we don't know whether Ralph just put it there or whether Ralph had to write a polite letter to the landlord asking for permission to put it there or whether Ralph asked permission and the landlord said, okay, I'll let you put it there, but you have to pay me another $500 a month. And that's why our evidence was rebuttable but wasn't rebutted. We put forth the only evidence saying this is their shopping cart rack on this space. They use this parking lot. Their customers use it. They said it's their parking. They stipulated that it's readily achievable for them to make whatever changes are necessary on this parking lot. It was evidence certainly that tipped the scales. It preponderates in favor of the plaintiff. They could have come back and rebutted it. They chose not to put on any case at all. And that's why when the judge says, the district judge said, there is no evidence whatsoever. And the thing that's remarkable is it says there is no evidence that the defendant had any legal or contractual right or authority expressed or implied to modify or alter the parking space. And yet Ralph stipulated that it was readily achievable to modify or alter the parking space. And we don't think that it's game playing or mincing words. That was exactly what the case was about. And they entered into a stipulation of fact designed to obviate the need for more discovery. They said, well, stipulate, it's readily achievable to make these changes. And they said it stipulated it was Ralph's readily achievable. The readily achievable, just, I don't know. You can't count much on that because that's, there, a defense that it's not readily achievable means it's something, it would cost $10 billion to do it or the physical structure doesn't really permit these kinds of, you know, the terrain doesn't permit it to be made and so on. Then it's not readily achievable. But that's really a different issue from who has to achieve it. Actually, that's not true, Your Honor. That's only one of the defenses. Finances only plays one part of that definition that the statute says has to be easily accomplished, able to be carried out without difficulty. These are all passives, able to be carried out and things. It doesn't say who's doing the carrying out. Well, you know, the statute applies to landlords, tenants, operators. As we stated before in the general rule, it applies to all of them equally. And the question is who can carry it out. It talks about ability. And in the, it's within, the word control is never used anywhere in the statute. The only place it plays a role is under readily achievable. That use of the word control never exists anywhere in the entire statute. So control isn't it. I would think it would help you if it said control. But control isn't in there. Operate, I guess, is what you're keying on because you haven't proved that they're the owner and you haven't proved they're a tenant of that parking lot. That's right. And I don't think we need to prove either that they're a tenant or an owner of the parking lot. And so you're saying they operate the parking lot. I'm saying that it's part of the. At least the parts of it in front of the browse. I'm saying that they operate the grocery store. And one of the privileges and advantages of this shopping grocery store that are offered to its customers are this convenient parking right out in front, this whole relationship. And when that's one of the accommodations. There may be very convenient parking on the street. That's right. And they would never stipulate that it's readily achievable for them to go and fix someone else's property or make changes. And that was the issue in this case was do you have the ability to do it. And that, I guess that's what the question comes down to. What does that say? Counsel, let me ask you this. If a patron were shopping in a store other than Ralph's and filed this same claim, would Ralph's be liable under the ADA in your view? I don't think so. Because they wouldn't have standing. Because they wouldn't have been denied or discriminated against by Ralph's in access to its goods or services. But if Ralph's owns the parking lot and or controls the parking lot, why wouldn't Ralph's be liable? If, in fact, there was proof that they own the parking lot, then they would be responsible as an owner of the parking lot. So your position is that Ralph's is responsible only because the parking lot is serving its store? And they've stipulated that it's readily achievable for them to remove the barriers and to make sure it complies with the code. It's the combination of having this privilege or advantage for its customers that it offers to its customers. It wouldn't exist if it weren't there. They offer this to their customers, and they've stipulated that it's readily achievable for them to make the changes. It's the combination. They didn't say for them. I think you're adding a little to it. No, they did say for them. And the pretrial says it's readily achievable for Ralph's. It says for Ralph's to make these changes. Where does it say this? This is on the pretrial statement, Ralph's own words, pretrial statement. This is excerpt of record number four. Again, this is under page seven. Under undisputed facts, number seven, it is and was readily achievable. That term is defined at. Readily achievable for Ralph. For Ralph's. That's what it says. For Ralph's to install an inaccessible parking space to the property as required pursuant to the code. Okay. Now, does it say it's readily achievable for Ralph's? Then does it have the kind of a caveat anywhere in there the way the stipulation that I'm looking at, where they first stipulate that. That was just the statement. I'm looking at the one where it says stipulating defendant is not stipulating that it is a responsible party. Right. You're making reference to the stipulation of fact that was entered into during the course of the discovery phase, which is the record number three. Right. Yeah. Filed July 13th, 2001. Was there any kind of a disclaimer in this other? I'm not aware of that, Your Honor. And we weren't asking for them to stipulate they were liable, they were responsible. That's something for a trier fact to ultimately conclude. We just wanted the hard facts, the stipulation that it was readily achievable for Ralph's to install. Counsel, my feeling is both sides are just playing games here. Both sides have access to the lease. Neither side produces it, and they force us to decide the case on an inadequate basis. Is there any way we can just remand this so that the lease will be produced and the judge can reconsider it with the lease? I imagine that's within your authority. I guess. Is it? That's what I'm asking. I guess the problem that we had, I don't know. The case was completely in. The judge ruled. He's either right with his findings of fact that there's no evidence whatsoever. That's why he says no evidence at all, not even slight evidence, no evidence that they have any ability or any control to make any change or modification in the parking lot. And I don't see how the judge says that when they stipulated they can put parking spaces into that parking lot. Even if he's wrong and there's a smidgen of evidence, we'd still have to affirm if there's not a preponderance. Right. And that's why it's so important, the fact that the defense didn't put on any evidence. It's not like they're prepondering. They're making their arguments. They're putting on their defense that rebuts any of ours. The only evidence put forth was by the plaintiff. The only evidence. Look, they said it's their parking. They stipulated it's readily achievable for them to make these changes in the parking lot. Their customers, the only one that testified was their customer, says this is for the customers, the shopping cart return. All of these things are evidence in favor of the plaintiff, and I agree that it's not the strongest, and I wish that we had put a lease agreement had we known that this was going to be the contentious point, but we did put forth evidence, and there was nothing on the other side. One question before you sit down. How many stores use this parking lot? Well, there's no evidence in the record of that. No, there is some evidence. I think there might be – Rouse is the big anchor tenant there, and I think there's two or three other small stores that don't have shopping carts, don't use them, and on the side. Thank you. Thank you, counsel. Good morning, Your Honor. It's Thomas J. Leans for Defendant Rouse, Grocery Company. With all due respect to the Court, there's no evidence that there's a lease because there is no evidence that there is a lease. Well, of course. No, Your Honor, with all due respect, not – I sort of doubt that Rouse is a squatter. I mean – No, Your Honor, Rouse may own its building. Homesteads in Alaska, people could just put down stakes, but I don't think Rouse did that. No, Your Honor, Rouse may own its building. It may. And it may have an agreement with somebody who owns the parking lot. But as Judge Shub said, the courthouse in Sacramento has a parking lot across the street that says courthouse parking. As a matter of fact, this courthouse, Your Honor, has no public parking, I believe. There's a public lot next door that somebody else owns, and it says courthouse parking on it. The key here is it's the burden of the plaintiff to establish that the defendant is legally responsible to comply with the Americans with Disabilities Act. I would suggest to the Court that the plaintiff is being somewhat disingenuous at this point in time by referencing Exhibit 4. Exhibit 3, which Judge Canby pointed out, is the stipulation of fact that was prepared in the discovery and had an express reservation that my client did not agree that it was responsible for maintaining the parking lot. And Exhibit 5, which is the actual stipulation which the parties entered into prior to trial with respect to that, does not reference the fact that it was Rouse that it was readily achievable for Rouse. It just stipulated, as Judge Rawlinson pointed out, that it was readily achievable. It was in a brief that my client submitted that it offered that it would be an undisputed fact, but the plaintiff never filed their brief, and when there was ultimately a negotiation with respect to the actual stipulation, the stipulation was not that it was readily achievable for Rouse. There is no evidence before this Court that would justify this Court overturning the finding of fact that Rouse had a sufficient legal interest or control over the parking area. There may be a lease between Rouse and the owner of the parking area. Rouse may be the owner of the parking area. A third party may be the owner of the parking area, and Rouse may own its store independently and may or may not have some agreement with the owner of the parking area. None of that is before the Court. The plaintiff in this case cites EMRIC for the proposition that having some business interest is sufficient. In fact, EMRIC stands for the opposite proposition. EMRIC stands for the proposition and points to the Commission's comment and the regulations which say that a landlord is responsible for a tenant's space, irrespective of the fact that the tenant may control the space. In the EMRIC case, there's a lease which gave the tenant the right and, in fact, the obligation to maintain the common area. But as the district judge said in Independent Living, typically it is the landlord who is responsible for maintenance of the common area, and the tenant would not, unless the tenant had some contractual right to control the common area, be responsible for the ADA compliance issues in the common area. Counsel, opposing counsel referred us to the fact that the judge denied your motion for judgment after presentation of the plaintiff's case. And the inference is if the judge denied your motion at that point and you didn't put on any evidence and it was clearly erroneous for the judge to rule in your favor, what's your response to that? Your Honor, the transcript does not reflect the tenor of the times and the tenor of the courtroom at the time. You'll notice if you read that part of the transcript, plaintiff's counsel argued in opposition to the Rule 52C motion. The judge started to make his ruling after we came back from a break. Plaintiff's counsel wanted to argue further and the judge interrupted him and said, I'm going to deny the motion, and the question becomes, and the difference between a ruling under 52C and a ruling under 52A, a judgment, is whether as a matter of law the plaintiff met its burden, which is a burden of coming forward, a burden of production, or whether the plaintiff sustained its burden of persuasion, which is a preponderance of the evidence standard. Your Honor, in my heart of hearts, having sat through that trial, I believe the plaintiff did not meet its burden of production. Notwithstanding that, that's not the standard we're here before the Court on. The Court has to accept the trial court's findings of fact with respect to the determinations that the judge made. And granted the first motion, we would be looking at this and saying, was there anything in here that could permit a trier of fact to rule one way or the other? That's right, Your Honor. It's a straight de novo question. What we've got now is, was this trier of fact clearly erroneous in deciding it? That's correct, Your Honor. We would have been on a de novo standard if we were here just on a Rule 52C motion. We're on a preponderance standard, clearly erroneous with respect to those findings. And the Court, each of Your Honors, has postulated some of the fact issues. Judge Shub and the trial court postulated fact issues. And those are all – that's the problem. The plaintiff didn't sustain its burden here. And maybe it could have. Maybe it could have conducted the discovery. Maybe there's evidence that would have sustained its burden. In point of fact, I don't believe that to be the case. But that's not before this Court. The question is, did the plaintiff sustain its burden of persuasion? And whether or not there's sufficient evidence for this Court to make a finding that Judge Shub was clearly erroneous in his finding of fact, that there was sufficient control by Rouse over the parking area, that it was the operator of a public accommodation. Your Honor, the parking lot is a public accommodation. The store is a public accommodation. There is no question that Rouse is responsible for compliance in the store. There's a question whether Rouse is obligated for compliance in a separate public accommodation. And the Court needs to look at whether it has sufficient control over that. Well, opposing counsel told us control was not in the statute. So what do you base your control requirement on? Your Honor, I believe that it does have – the word control is not. It's whether or not the defendant operates, owns, leases from, or leases to. Those are the magic words in the statute. And there's no evidence that Rouse does any of those. As to the parking lot. As to the parking lot. The evidence of Rouse, and I'm going to use this with a small-I interest, in the parking lot is that some of its customers use the parking lot. Those people and other people frequent – I think the testimony from the plaintiff was there are at least six businesses in the shopping center that are frequented by people who use the parking area. That at some point in time, Rouse had a grocery cart return area in the parking lot. Again, no evidence as to what basis that was for being there. And I suggest, Your Honor, that the court has to defer to Judge Shub's finding of fact with respect to the amount of interest that Rouse had with respect to the parking lot. Counsel, go ahead. There was evidence in the record that Rouse did cause a change in the parking lot, some modification to the parking lot. Well, Your Honor, I believe that the reference is, again, to the Rouse pretrial brief, saying that it did or it caused it to occur. There's no evidence as to what method it used to cause it to occur. Does that evidence adduce that trial? No. Your Honor, unfortunately, what we have here and what the record is, and in fact if the court looks back at what was argued to Judge Shub, none of the issues which are raised on appeal were in fact presented to Judge Shub with respect to the issue of the answer. The stipulations were not argued to Judge Shub. They were part of the record. They weren't argued when they first argued the 56C motion. They were never raised again in a motion for reconsideration, a motion for new trial, or any post-trial proceeding. Not that they are obligated to do so, but obviously it would be judicially appropriate to let the ‑‑ if you felt there was something in the record that the judge completely missed, you would go back to the judge to offer it up. Your Honor, I think that there is sufficient evidence to support the finding that Judge Shub made. There's inadequate evidence to have a compelling determination that the decision was wrong or clearly erroneous. And based upon that determination, I think this Court on both questions, question one, which was presented by the plaintiff on appeal, does there have to be some sufficient interest that a defendant is responsible to be liable for an ADA violation on a particular piece of property? The answer, I think, is yes, notwithstanding the fact that they argue it is not. I don't think the Emmerich case, I don't think that independent living either compel a different result. And in fact, it's illogical to suggest that this Court, the federal government, would be responsible for compliance in the parking lot next door that it doesn't own or have any other legal interest in. And I suggest that there's no evidence that there's legal interest. So the question of law, de novo, Judge Shub made the right decision. Question of fact, it's not clearly erroneous that my client had a sufficient interest that it was legally responsible. Just as a matter of form, as finding number four, there's no evidence the defendant, now or at any time in the past, owned. As a finding of fact, by a trier of fact, you would think he'd simply say, Ralph did not own Lee's upgrade, instead of saying there's no evidence of that. But it doesn't matter. Your Honor, I understand. I think there was a lot going on in the courtroom that morning. And I know that... Well, and then in his conclusions, he said, you know, he had the burden and he didn't meet the burden. And I think that that's what this comes down to, Your Honors, is this is really a question of burden of proof, both of production and persuasion. And there are two burdens. If he had granted the 56C, we'd be arguing about burden of production. We are. Your Honor, do you know of any authority dealing with operation as creating liability, aside from being landlord or tenant or owner? I'm not aware of any, Your Honor. I think that there is no authority for that. And logically, there has to be some relationship, because since they are seeking injunctive relief for a court to order, as they request this court do, that my client be required to comply with the ADA with respect to the parking area, there would have to be some legal right for my client to do that, some legal interest that would allow my client to do that. Otherwise, it would be impossible. They probably pretty easily do it. Your Honor, there may be some commercial ability to do it. But the answer is, and the problem is it's not in the record, there is not a lease between my client and any party that owns that property. It's a different relationship. And that's not in the record, but it's not in the record because the plaintiff didn't seek to put it in the record. Your Honor, my clients would ask that the court affirm the decision of Judge Shub and award my client attorney's fees and costs on appeal. Thank you. Thank you, counsel. I think we ran through all the appellants' times, didn't we? Yep. Goodell v. Rouse is submitted.
judges: Canby, Kleinfeld, Rawlinson